# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TERRANCE ANTHONY FURLINE,

Defendant-Appellant.

UNPUBLISHED
July 3, 2018

No. 335906
Saginaw Circuit Court
LC No. 16-042043-FH

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALVIN BERNARD JENKINS, SR,

Defendant-Appellant.

No. 336203
Saginaw Circuit Court
LC No. 16-042044-FH

Before: O'BRIEN, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

Defendants appeal as of right their jury convictions of conducting a criminal enterprise, MCL 750.159i(1), third-degree arson, MCL 750.74, conspiracy to commit third-degree arson, MCL 750.157a; MCL 750.157a, first-degree retail fraud, MCL 750.356c, and conspiracy to commit first-degree retail fraud, MCL 750.356c(2); MCL 750.157a. They were each sentenced as a fourth habitual offender, MCL 769.12, to 320 months to 50 years' imprisonment for all convictions. In both docket numbers 335906 and 336203, we vacate the defendants' convictions and sentences and remand for a new trial.

## I. BACKGROUND

Defendants' convictions stem from a fire and attempted theft that occurred on October 29, 2015, at the Home Depot in Kochville Township, Saginaw, Michigan. The day before on October 28, there was a completed theft and fire at the Flint Township Home Depot. Defendants' devised to start a fire in the store as a distraction in order to steal and then return items without a receipt for store gift cards that were later sold to third parties for cash. An item

-1-

taken from the Flint Township Home Depot was returned without a receipt to the Lowe's store in Burton, Michigan. Signatures were required for the returns. Multiple employees, who were working the morning shift at the Saginaw Home Depot on October 29, identified defendants in court. Defendants were also identified by loss prevention personnel from the two home improvement stores' video surveillance footage. Vehicles used in the heists were identified by the defendants' girlfriends as belonging to them. Items of clothing similar to that worn by the persons seen in video surveillance were seized from the respective girlfriends' residence where each defendant stayed. Jenkins's cellphone mapped his location as it moved to each store. Fire inspectors determined the cause of the fires at the Flint and Saginaw Home Depot stores to be arson. The fire at the Saginaw Home Depot in particular caused over a half million dollars in damage.

## II. DOCKET NO. 335906

In docket number 335906, defendant Furline seeks a new trial on grounds that his convictions were against the great weight of the evidence and the joinder of his trial with defendant Jenkins denied him a fair trial. He further seeks resentencing because he argues his sentence was unreasonable and not proportionate to the seriousness of the circumstances.

## A. GREAT WEIGHT OF THE EVIDENCE

We review de novo a challenge to the sufficiency of the evidence. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). "We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "The prosecutor is not required to present direct evidence linking the defendant to the crime." *People v Saunders*, 189 Mich App 494, 495; 473 NW2d 755 (1991). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v. Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).

We review "a trial court's grant or denial of a new trial on the ground that the verdict was against the great weight of the evidence" for an abuse of discretion. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007).

"A trial court may grant a motion for a new trial based on the great weight of the evidence only if the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Unger*, 278 Mich App at 232 (citation omitted). "Conflicting testimony and questions of witness credibility are generally insufficient grounds for granting a new trial," and "[a]bsent exceptional circumstances, issues of witness credibility are for the trier of fact." *Id*. Generally, "a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v*

*Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "[W]hether the evidence was sufficient to sustain a conviction and whether the verdict was against the great weight of the evidence are two separate questions." *People v Brown*, 239 Mich App 735, 746 n 6; 610 NW2d 234 (2000). However, where, as here, the defendant's "great weight" argument is premised on his "sufficiency of evidence" claim, the failure or success of one argument necessarily means the same result for the other. *Id.*

Furline argues that there was insufficient evidence to convict him of "conducting a criminal enterprise" and, therefore, his conviction for this crime was against the great weight of the evidence, because there was no evidence of a "pattern of racketeering activity" or that the arson was done for financial gain. Under MCL 750.159i(1),

> A person employed by, or associated with, an enterprise shall not knowingly conduct or participate in the affairs of the enterprise directly or indirectly through a pattern of racketeering activity.

" '[R]acketeering' means committing, attempting to commit, conspiring to commit, or aiding or abetting, soliciting, coercing, or intimidating a person to commit an offense for financial gain . . ." MCL 750.159(g). To prove a "pattern of racketeering," the plaintiff must show

> "Pattern of racketeering activity" means not less than 2 incidents of racketeering to which all of the following characteristics apply:
>
> (i) The incidents have the same or a substantially similar purpose, result, participant, victim, or method of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated acts.
>
> (ii) The incidents amount to or pose a threat of continued criminal activity.
>
> (iii) At least 1 of the incidents occurred within this state on or after the effective date of the amendatory act that added this section, and the last of the incidents occurred within 10 years after the commission of any prior incident, excluding any period of imprisonment served by a person engaging in the racketeering activity. [MCL 750.159f(c)].

Plaintiff further charged Furline and Jenkins with first-degree retail fraud and third-degree arson under an aiding and abetting theory. To be convicted under an aiding and abetting theory, the plaintiff must prove:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006).]

Furline first argues that there was insufficient evidence to establish a "pattern of racketeering" to convict him of conducting a criminal enterprise because there was no evidence

that he participated in "2 incidents of racketeering" or that "[t]he incidents amount[ed] to or pose[d] a threat of continued criminal activity." MCL 750.159f(c)(ii). The record does support the argument that Furline was not involved in setting the fire at or removing items from the Flint Home Depot. However, there was evidence of his knowledge of the theft and subsequent participation in the activities underlying the fraudulent return of the stolen items. Furline's mother Doris Furline-Walker testified without contradiction that her son was merely present during the actual theft and arson at the Flint Home Depot. However her testimony to the contrary, there was a receipt bearing her son's name for the return of the item stolen from the Flint store, that indicated he participated in the crime after the fire to obtain financial gain. We agree that Walker maintained that she was the one who did the non-receipt return, even after the court showed her the exhibit of the October 28 Home Depot return receipt with her son's signature. Walker also testified that she shared some of the profits of that return with her son. The jury could reasonably infer from Walker's testimony that Furline was involved in the Flint Home Depot offenses and that they were done for financial gain.

The argument of mere presence at the Saginaw Home Depot is also unavailing. Walker testified that Jenkins contacted her later on October 28 and asked if she wanted to go with him the next day to steal from the Saginaw Home Depot and she declined. However, the next day when Walker awakened, her son Furline was not home. Video surveillance, phone mapping evidence, and witness testimony showed Furline was at the Saginaw Home Depot with Jenkins. Evidence introduced at trial showed that once at the Saginaw Home Depot, Furline requested assistance from employee Mason Martinez with putting the most expensive power washer on a flatbed cart. After gathering other "big ticket items," the cart was passed to Jenkins who placed himself by the exit at the pro desk. This handoff between them was similar to the modus operandi at the Burton Lowe's store with the two faucets. Other evidence suggested Furline stayed behind in aisle 13 where employee Jacob Tyson noticed him just standing around and asked if he needed any help. Tyson testified that moments later Furline notified him of a fire in aisle 13. It is true that no one witnessed who started the fire and Walker testified that Jenkins admitted to her that he started the fire. However, when the fire started, video surveillance and employee Kathy Marciak's testimony placed Jenkins at the pro desk and Tyson's testimony placed Furline in aisle 13. Fire Captain Michael Comstock, Sergeant Lenny Jaskulka, and fire investigator Brandon Rossi all identified the origin of the fire to be in aisle 13. Further, there was no evidence of Furline being anywhere else in the store besides aisle 13 around the time the fire began, or of other persons besides him being in aisle 13 when the fire started. From this evidence, a jury could reasonably infer that Furline was more than merely present at the scene with Jenkins at the Saginaw Home Depot on October 29 and that he was involved in the events that took place there. Further, Furline's calling the arson at the Saginaw Home Depot a "diversionary tactic," no less makes it an offense committed for financial gain under MCL 750.159(g). The fire was set for the purpose of stealing items that defendants could turn around and return for cash.

Furline also argues that the Flint and Saginaw incidents did not amount to or pose a threat of continued criminal activity under MCL 750.159f(c)(ii), because there was no evidence that defendants were planning a third theft or arson. Furline's contention reads a requirement into the statute that does not exist. To prove a pattern of racketeering, there is no requirement of there being a plan of a third incident. Rather, the plaintiff must prove that two incidents of racketeering amounted to or posed a threat of continued criminal activity. The jury had

sufficient evidence upon which to conclude that had the Saginaw plan succeeded there would have been another criminal effort. Other stores feared for such activity. In fact, Michael Stowe, assistant store manager at the Saginaw Home Depot, advised associates at their morning meeting of the possibility of the defendants coming there and for them to be on the lookout. Not only Home Depot, but Lowe's also understood the Flint arson and theft as posing a threat of continued criminal activity. The events at Flint caused the loss prevention manager at the Flint Township Lowe's store to reach out to the loss prevention manager at the Burton Lowe's store, only to find out that defendants had already been there. Defendants' continued criminal activity was actually only interrupted by the failed attempt to remove over $1,000 in items from the Saginaw store. In keeping in line with their prior pattern of conduct, had their plan in Saginaw succeeded, another home improvement store would have fallen victim to defendant's non-receipt return scheme.

Viewed in a light most favorable to the prosecution, the evidence was sufficient from which a rational trier of fact could have found that Furline, acting in concert with Jenkins, entered the Flint and Saginaw Home Depots with the intent of starting fires to permanently deprive the stores of their property.

## B. JOINDER

"The decision as to whether codefendants will be tried separately or jointly rests within the sound discretion of the trial judge and will not be reversed on appeal absent an abuse of that discretion." *People v Hicks*, 185 Mich App 107, 117; 460 NW2d 569 (1990). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217.

In *People v Hana*, our Supreme Court held,

> pursuant to M.C.L. § 768.5; M.S.A. § 28.1028, and MCR 6.121(D), the decision to sever or join defendants lies within the discretion of the trial court. Severance is mandated under MCR 6.121(C) only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice. The failure to make this showing in the trial court, absent any significant indication on appeal that the requisite prejudice in fact occurred at trial, will preclude reversal of a joinder decision. [*People v Hana*, 447 Mich 325, 346–47; 524 NW2d 682, amended on reh in part sub nom. *People v Gallina*, 447 Mich 1203; 524 NW2d 710 (1994), and amended on reh in part sub nom. *People v Rode*, 447 Mich 1203; 524 NW2d 710 (1994)

According to *Hana*, a showing that defendants' separate defenses are " 'mutually exclusive' or 'irreconcilable' " would establish prejudice and mandate severance. *Id*. at 349. Further, defenses are "mutually exclusive," "if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant." *Hana*, 447 Mich at 349-350.

Furline's counsel motioned the court for separate trials on April 14, 2016, based on discovery he received of Jenkins's recorded interview statements to detectives that disavowed involvement in the Saginaw Home Depot theft and fire, and blamed both events on Furline. Furline's counsel contended that Furline's theory of the case was that Jenkins acted alone in committing the arson and retail fraud. The motion went on to argue, that in the event Jenkins's videotaped statements were played for the jury, he would be denied his right to confrontation and a *Bruton* situation would arise.[1] Furline's counsel concluded that defendants' defenses were mutually exclusive and antagonistic, and requested severance of their trials to avoid the prejudice that would result to Furline should he be forced to defend against Jenkins and the plaintiff. Furline made the same claims in his affidavit supporting the motion. Plaintiff's May 5, 2016 response argued Furline failed to demonstrate that severance was necessary, and replied that it did not intend to introduce statements made by either codefendant. At the hearing on the motion, Jenkins's counsel had no objection to separate trials. Plaintiff reiterated it had no intention to introduce the statements at trial and stated the statements would not be admissible through any other witness, unless either defendant testified. The court took the matter under advisement and later denied the motion. Noting that the plaintiff averred that it would not offer the statements of either defendant at trial, the court found that a joint trial would not "prejudicially pit one defendant against the other." The court viewed Furline and Jenkins's positions as, at best, "antagonistic claims as to who was responsible for setting the fire." It resolved that codefendant statements would only be introduced in the event either defendant chose to take the witness stand and then, subject to cross-examination.

In *Hana*, the Supreme Court considered whether the defendants in three consolidated cases were prejudiced by the trial courts' decisions to deny their motions for separate trials. In defendant Hana's case, involving two brothers Durid and Kafan Hana, it concluded no because Durid's affidavit in support of his severance motion was conclusory and thus insufficient to establish the requisite prejudice to mandate severance. In the defendants Rode's and Gallina's cases, the Court held the dual jury procedure was a sufficient form of severance to cure the risk of prejudice to the defendants' substantial rights where each defendant also testified that the other was responsible for firing a gun that resulted in their convictions for second-degree murder and felony-firearm.

The *Hana* Court found it dispositive that at the time the trial court decided defendant Durid's severance motion, Durid's accompanying affidavit "lacked sufficient specificity to enable the trial court to accurately determine what the defenses would be, how the defenses would affect each other, and whether the defendants' respective positions were indeed mutually exclusive or merely inconsistent." 447 Mich at 355. In Hana's case, the Supreme Court concluded

---

[1] A *Bruton* situation is in reference to *Bruton v. United States*, 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968). "In *Bruton v. United States*, *supra*, the Court held that a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating unredacted confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant." *People v Banks*, 438 Mich 408, 415; 475 NW2d 769 (1991).

Potentially prejudicial evidence, either physical or testimonial, was not substantiated by the affidavit or at the hearing. A trial court ruling on a pretrial motion must have concrete facts on which to base a ruling; mere finger pointing does not suffice. In the absence of proof that clearly, affirmatively, and fully demonstrated that defendant's substantial rights were prejudiced and that severance was necessary, we will not interfere with the trial court's discretion. [*Id*.]

After determining that Durid's affidavit lacked such specificity, *Hana*'s analysis continued to examine, with the benefit of hindsight, whether defendant Durid was actually prejudiced at trial. Beyond the opening and closing arguments of defense counsels, the Court noted there was "nothing inherently antagonistic in the evidence adduced at trial." *Id*. The Court made this statement in consideration of Durid's and Kafan's statements to law enforcement being admitted at trial:

> [Durid], after being advised of his rights, when asked about the safe that was found in his bedroom, stated that the safe belonged to him and that he knew the combination of it. He stated he kept his mother's jewelry, some personal papers and blank checks in the safe. He denied knowing there were three kilos of suspected cocaine in the safe. He said he shares the bedroom with his brother but he had no idea what his brother was doing. *Id*. at 355-356.

"Kafan never made a statement or even inferred that the drugs did not belong to him or were the sole property of his brother." *Id*. at 356. Based on that evidence, the Court determined the Hanas' defenses were not mutually or irreconcilably antagonistic. It further held that because the prosecution's evidence was admissible against both defendants and the jury was provided with cautionary instructions to treat each defendant individually, no prejudice resulted. *Id*.

Under a *Hana* analysis, we find that the trial court abused its discretion in denying Furline's motion for separate trials. Unlike the court in *Hana*, at the time the motion was presented in this case, the trial court had sufficient evidence to determine the codefendants' defenses were mutually exclusive. Both Furline's motion, and mirroring affidavit, attested to the undisputed evidence of recorded statements made by Jenkins not only denying his own involvement, but also blaming Furline for the incidents at the Saginaw Home Depot. The court was also specifically informed that Furline's defense would also be that he was not complicit in either the arson or the retail fraud, and that he blamed Jenkins for committing both offenses on his own. Thus, the court was fully apprised of the specifics of the codefendants' mutually exclusive defenses and the potential prejudice from one defendant being pitted against another in order to prove each's innocence. Still, the court found any antagonism based upon the codefendants' statements was obviated since the prosecution agreed it would not offer any recorded, oral or written statements made by either defendant incriminating the other and honored that agreement at trial. Based on this information, the court's decision not to grant separate trials was outside the range of principled outcomes.

With the benefit of hindsight, we find that the court's decision to deny severance as having resulted in the codefendants being prejudiced at trial. The mutual exclusivity of the codefendants' positions was admitted at trial beyond counsels' opening and closing arguments

with each codefendant having to prove the other's culpability through each witness's testimony. Walker in particular testified that Furline was not involved in the Flint Home Depot incident, that Jenkins told her he set the fire there, that Furline had only known Jenkins for about a week, and that Jenkins wanted to repeat the Flint arson and retail fraud the next day at the Saginaw store. Without Furline having to testify himself, his mother's testimony was evidence that promoted his defense that it was Jenkins idea to commit arsons and thefts at home improvement stores and he had nothing to do with Jenkins' plan. Jenkins did not have a similar witness in his corner, but did cross-examine Walker and point out Furline's participation in the crimes through Joy Royal's testimony that Furline signed for a no receipt return at the Burton Lowe's. This situation created what *United States v Tootick*, 952 F2d 1078 (CA 9, 1991), referred to as a subtle effect of joining defendants who have asserted mutually exclusive defenses. "All evidence having the effect of exonerating one defendant implicitly indicts the other. The defendant must not only contend with the effects of the government's case against him, but he must also confront the negative effects of the codefendant's case." *Id*. at 1083.

Plaintiff maintains that the act of finger pointing is to be expected by codefendants charged under an aiding and abetting theory, and does not establish mutually exclusive defenses. By definition however, mutually exclusivity of defenses does not concern codefendants' finger pointing, but whether the evidence at trial is such that "in order to believe the core of the evidence offered on behalf of one defendant, [the jury] must disbelieve the core of the evidence offered on behalf of the co-defendant." *Hana*, 447 Mich at 349-350. Significantly, in *Hana* the Court found it dispositive that neither brother/codefendant blamed the other, and in *Rodes* and *Gallina*, where the codefendants did testify, the Court found the use of separate juries sufficient to guard against prejudice. In the instant case, each defendant denied involvement in all incidents that occurred at the Saginaw store and completely blamed the other for what transpired. Further, they were not afforded any type of severance. Given that plaintiff's theory was one of aiding and abetting blaming both codefendants, and each codefendant attempted to introduce evidence blaming the other, the jury question turned from not whether the individual codefendants acted in concert to commit the crimes alleged, but which of the two was guilty. "That dilemma is not presented to dual juries." *Id*. at 360. When a dual jury procedure is employed, "[e]ach jury is concerned only with the culpability of one defendant." *Id*. In other words, each separate jury is able to find its' own defendant innocent or guilty "without the uneasiness of inconsistency that would be presented to a single jury in a joint trial. The chance for prejudice is therefore significantly lessened." *Id*. At the least, these codefendants should have been granted separate juries to evaluate the evidence against each defendant. The court's decision to predicate the possibility of prejudice on the defendants' right to testify did not protect either defendant from the latent prejudice that would arise as each defendant pursued his mutually exclusive defense at trial. Accordingly, Furline and Jenkins should be afforded new trials, this time with some device of severance.[2]

---

[2] We recognize that only Furline raised the issue of joinder, however, we have previously held that in a joint trial where only one defendant raised an issue requiring reversal, each defendant was entitled to reversal on the same basis. See *People v Davis*, 135 Mich App 602, 606; 354 NW2d 274 (1984):

## C. RESENTENCING

An issue is preserved for appeal when it was raised in and decided by the trial court. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Furline did not argue below that his sentence was unreasonable or not proportionate therefore, the issue is unpreserved.

We review de novo "the proper interpretation and application of the statutory sentencing guidelines, MCL 777.11 *et seq*." *People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006).

"We review for an abuse of discretion whether a sentence is proportionate to the seriousness of the offense." *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011).

In *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), the Michigan Supreme Court found Michigan's sentencing guidelines constitutionally deficient to "the extent to which the guidelines require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that mandatorily increase the floor of the guidelines minimum sentence range, i.e., the 'mandatory minimum' sentence under *Alleyne* [*v United States*, 570 US 99; 133 S Ct 2151; 186 L Ed 2d 314 (2013)]." After *Lockridge*, a sentencing court was no longer required to articulate substantial and compelling reasons for departing from the applicable guidelines range. *Lockridge*, 498 Mich at 364-365. Instead, "a guidelines minimum sentence range calculated in violation of *Apprendi* [*v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000),] and *Alleyne* is advisory only and that sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness." *Lockridge,* 498 Mich at 365. "The appropriate procedure for considering the reasonableness of a departure sentence is not set forth in *Lockridge*." *People v Steanhouse*, 313 Mich App 1, 42; 880 NW2d 297 (2015), aff'd in part, rev'd in part 500 Mich 453; 902 NW2d 327 (2017). In *Steanhouse¸* this Court agreed that the principle of proportionality from *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), should apply to determine whether a departure sentence is reasonable. Under *Milbourn*, the principle of proportionality "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636. "In making this assessment, the judge, of course, must take into account the nature of the offense and the background of the offender." *Id*. at 651.

The reasonableness review under *Lockridge* and application of *Milbourn*'s principle of proportionality are only triggered when a sentence departs from the sentencing guidelines range. *Lockridge*, 498 Mich at 392. In *People v Schrauben*, 314 Mich App 181, 193; 886 NW2d 173, app den 500 Mich 860; 884 NW2d 580 (2016), where the defendant's recommended minimum sentence was zero to 17 months' imprisonment, the defendant appealed his sentence of a

---

Only defendant Davis has raised this issue on appeal. However, both defendants were tried in a joint trial. The trial court's instructions applied to both of them. Moreover, this Court consolidated these appeals for purposes of decision. Under these circumstances, we believe that Calloway's conviction must be reversed on the same basis as Davis's conviction. [*Id*.].

minimum 16 months' imprisonment on the ground that he was entitled to an intermediate sanction.[3]  The Court held,

> [w]hen a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information. MCL 769.34(10). Defendant does not dispute that his sentence was within the recommended minimum guidelines range, and he does not argue that the trial court relied on inaccurate information or that there was an error in scoring the guidelines. Therefore, this Court must affirm the sentence.  [*Schrauben*, 314 Mich App at 196].

The same result is required here.  Furline acknowledges that his sentence is within the sentencing guidelines range of 99 to 320 months therefore, we start from the presumption that his sentence is proportionate. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008).  His reasons for arguing that his sentence is unreasonable and not proportionate are that 1) it was at the top of the guidelines; 2) his prior offenses were not severe; 3) his prior record did not justify the instant sentence; 4) he should have been sentenced differently than his ringleader co-defendant; 5) the arson offense was mis-scored; and 6) the retail fraud offense was not scored.  None of these factors overcomes the presumption of proportionality.  The fact that his sentence is at the top of the guidelines is of no consequence because still, there was no departure.  See *Schrauben*, 314 Mich App at 196.  His prior record and level of culpability also do not overcome the presumption of proportionality.  See *People v Daniel*, 207 Mich App 47, 54; 523 NW2d 830 (1994). Furline's other contentions with the scoring of his arson and retail fraud offenses were waived by counsel at sentencing who agreed the guidelines were proper at 99 to 320 months, stating, "I personally scored them.  That is what I came up with, Judge."  Even addressing Furline's scoring issues, the court was not required to independently score the guidelines for lower-crime-classes when sentencing on multiple concurrent convictions because "the guidelines range for the highest-crime-class offense would subsume the guidelines range for lower-crime-class offenses, and there would be no tangible reason or benefit in establishing guidelines ranges for the lower-crime-class offenses." *People v Lopez*, 305 Mich App 686, 691-692; 854 NW2d 205 (2014).

---

[3] Under MCL 769.34(4)(a),

> If the upper limit of the recommended minimum sentence range for a defendant determined under the sentencing guidelines set forth in chapter XVII is 18 months or less, the court shall impose an intermediate sanction unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections. An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less.

*Schrauben* applied *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015), to the statute and determined that it was no longer mandatory to impose an intermediate sanction by replacing "shall" with "may." *Schrauben*, 314 Mich App at 194.

Finding no error in the scoring or the information relied upon by the court in sentencing, Furline's sentence must be affirmed.

## III. DOCKET NO. 336203

In docket number 336203, defendant Jenkins seeks a new trial on grounds that he was denied the effective assistance of counsel, his right to equal protection in the racial composition of the jury, and a fair trial by the admission of other acts evidence. Defendant Jenkins additionally argues he is entitled to a new trial based on jury instruction error and police identification testimony.

## A. SUBSTITUTION OF COUNSEL

"A trial court's decision regarding substitution of counsel will not be disturbed absent an abuse of discretion." *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008).

As the Court explained in *Mack*:

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. [*People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991) (citations omitted)].

" 'When a defendant asserts that the defendant's assigned attorney is not adequate or diligent, or is disinterested, the trial court should hear the defendant's claim and, if there is a factual dispute, take testimony and state its findings and conclusion on the record.' " *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011) quoting *People v Bauder*, 269 Mich App 174, 193; 712 NW2d 506 (2005). We will not find good cause to substitute counsel based on "[a] mere allegation that a defendant lacks confidence in his or her attorney" or "defendant's general unhappiness with counsel's representation." *Strickland*, 293 Mich App at 398. Neither will "disagreements with regard to trial strategy or professional judgment . . . warrant appointment of substitute counsel[.]" *Id*. Instead, good cause will be found when "a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest." *People v McFall*, 309 Mich App 377, 383; 873 NW2d 112 (2015) (citations and quotation marks omitted).

Jenkins was appointed Attorney Philip Sturtz on November 9, 2015, who represented Jenkins through his preliminary examination until May 26, 2016, when he was granted permission to withdraw as counsel by the court on the account of illness. On May 27, 2016, the court appointed Attorney William Cowdry to represent Jenkins. On August 2, 2016, while acting in pro per, Jenkins filed a Motion to Fire/Dismiss Counsel that argued Cowdry was ineffective and should be substituted by other appointed trial counsel, because he was dishonest and would not give Jenkins discovery.

-11-

The court heard Jenkins's motion on August 18, 2016. The court indicated that it would allow a new attorney if both defendants would waive their rights to a speedy trial, because the court would not try the cases separately and did not want a lack of speedy trial claim. Jenkins stated he would not waive his right to a speedy trial and the court responded that he would have to go to trial with Cowdry. The court asked for a date when both defendants could appear to discuss a speedy trial waiver. This colloquy followed:

> *Jenkins*. There is no need to even go through all that. Just let him do it.
>
> *Court*. Well, you said he is ineffective. Do you want him or don't you?
>
> *Jenkins*. I don't even want to be – I don't even want to be in jail. I am not even supposed to be in jail. So I feel I am not supposed to be in jail. So I am just going to let him go on and do whatever he got to do. If he going to do it the correct way I will just let him do it.
>
> *Court*. Okay. Proceed to trial.
>
> *Cowdry*. Very well.
>
> *Court*. Make a time when you can see him, Mr. Cowdry.
>
> *Cowdry*. I will.

The above excerpt indicates first, that Jenkins waived his right to argue the issue of his trial counsel's substitution because he canceled his request on the record before the court. Waiver extinguishes any error. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). Second, because Jenkins's allowed Cowdry to continue to represent him and cut the court short of scheduling another hearing on the issue, the court did not make a final decision to deny him substitute counsel. There can be no abuse of discretion when no decision was made. In other light, the court's decision to further entertain the issue when Jenkins's co-defendant would be present, did not illustrate that the court forced Jenkins to make a decision one way or another. The court appropriately informed Jenkins that if he chose to dismiss Cowdry the trial could not go forward until new counsel was appointed and had the opportunity to prepare for trial, thus extending the trial date beyond the speedy trial timeline. In the end, Jenkins chose his counsel and proceeded to trial sooner rather than later, effectively withdrew his motion, and waived any subsequent objection.

## B. EQUAL PROTECTION

When reviewing a *Batson* challenge under *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986),

> the proper standard of review depends on which *Batson* step is before us. If the first step is at issue (whether the opponent of the challenge has satisfied his burden of demonstrating a prima facie case of discrimination), we review the trial court's underlying factual findings for clear error, and we review questions of law de novo. If *Batson*'s second step is implicated (whether the proponent of the

peremptory challenge articulates a race-neutral explanation as a matter of law), we review the proffered explanation de novo. Finally, if the third step is at issue (the trial court's determinations whether the race-neutral explanation is a pretext and whether the opponent of the challenge has proved purposeful discrimination), we review the trial court's ruling for clear error. [*People v Knight*, 473 Mich 324, 345; 701 NW2d 715 (2005)].

Here, the second step is involved.

In *Batson v Kentucky, supra*, the United States Supreme Court held it was a violation of the Equal Protection Clause for counsel to use peremptory challenges to exclude members of a jury venire based on their race. *Batson* also provided the three-step process the trial court is to follow to determine whether a defendant has shown exclusion based on race. The first step requires the defendant to show a prima face case of discrimination. *People v Armstrong*, 305 Mich App 230, 238; 851 NW2d 856 (2014).

To establish a prima facie case of discrimination based on race, the opponent must show that: (1) he is a member of a cognizable racial group; (2) the proponent has exercised a peremptory challenge to exclude a member of a certain racial group from the jury pool; and (3) all the relevant circumstances raise an inference that the proponent of the challenge excluded the prospective juror on the basis of race. [*Knight*, 473 Mich at 336].

If the defendant shows a prima facie case of discrimination, then the burden shifts to plaintiff to "rebut the defendant's prima facie case with a race-neutral reason for dismissing the juror." *Armstrong*, 305 Mich App at 238. This second step "does not demand an explanation that is persuasive, or even plausible." *Purkett v Elem*, 514 US 765, 768; 115 S Ct 1769; 131 L Ed 2d 834 (1995). "A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror.... Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v New York*, 500 US 352, 360; 111 S Ct 1859; 114 L Ed 2d 395 (1991). "[A]t *Batson*'s second step, a court is only concerned with whether the proffered reason violates the Equal Protection Clause as a matter of law." *Knight*, 473 Mich at 344. The prosecutor must "give a clear and reasonably specific explanation of his legitimate reasons for exercising the challenges." *Batson*, 476 US at 98 n 20. "Thus, if the government's explanation does not, on its face, discriminate on the basis of race, then we must find that the explanation passes *Batson* muster as a matter of law, and we pass to the third step of *Batson* analysis to determine whether the race-neutral and facially valid reason was, as a matter of fact, a mere pretext for actual discriminatory intent." *Knight*, 473 Mich at 344. For step three, "the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible." *Miller-El v Cockrell*, 537 US 322, 339; 123 S Ct 1029; 154 L Ed 2d 931 (2003). "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez*, 500 US at 359.

Furline argues the court did not make findings in accord with *Batson*'s three-step process and in particular, argues under the second step, that plaintiff failed to give a race-neutral

explanation for dismissing two potential jurors, Venireperson Tateionia Lipsey and Venireperson Gary Fowlkes, who were both African-Americans. We disagree. In respect to both Lipsey and Fowlkes, plaintiff's reasons for their dismissals were tailored to the venirepersons' responses in voir dire. For Lipsey, plaintiff stated he excused her because she said her father was prosecuted by his office and convicted of murder. This was a race-neutral explanation because it was based on something other than Lipsey's race. *Hernandez*, 500 US at 360. This Court has before upheld the fact that a veniremember had a relative prosecuted and convicted by the same prosecutor's office as a legitimate reason to exercise a peremptory challenge against the veniremember. See *People v Eccles*, 260 Mich App 379, 386; 677 NW2d 76 (2004) ("The prosecutor explained that a son of that proposed juror had previously been prosecuted and convicted by his office."); see also *People v Howard*, 226 Mich App 528, 535; 575 NW2d 16 (1997) (" . . . the record reveals that the juror was dismissed primarily because he had an uncle with whom he was close who had been tried for murder, a race-neutral reason."). We therefore find that the court's finding as it related to Lipsey was not erroneous. Plaintiff similarly relied on Fowlkes' responses in voir dire. Fowlkes first stated that it would be difficult for him to convict another African-American because he was African-American. After further questioning, Fowlkes agreed that he could make a determination based on the evidence without consideration as to race. Then Fowlkes stated that if he found the defendants not guilty, he would be outnumbered by the other jury members and it would be him against them. Plaintiff's reason for excusing Fowlkes was that he was concerned about his ability to be impartial. That was a race-neutral reason clearly based on the statements Fowlkes made in court. The court disagreed with plaintiff's characterization of Fowlkes's statements and granted the peremptory challenge based on Fowlkes's last statement that it would be him against the panel. This is another facially race-neutral explanation and therefore valid. *Knight*, 473 Mich at 337. Based on this record, we also conclude that the court did not err in upholding the exercise of plaintiff's peremptory challenge against Fowlkes.

Jenkins also contends the court did not comply with *Batson* protocol by articulating separate findings for each step in the three-step process. We disagree. The court's conclusion, that there was good reason to strike both jurors, directly after the plaintiff stated its reasons for peremptory removal constituted the court's finding that the reasons were race-neutral. The court's additional conclusion that there was sufficient cause to dismiss them constituted its finding that the reasons were not pretext. The court's ruling on the ultimate question of intentional discrimination makes the issue of whether the court made a finding that Jenkins shown a prima facie case of discrimination moot. *Hernandez*, 500 US at 365.

## C. EVIDENTIARY CHALLENGES

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Jenkins concedes this issue was partly unpreserved when he argues that while his attorney did object to some testimony, counsel did not object to the bulk of testimony. In cases of preserved evidentiary challenges, the trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Aldrich*, 246 Mich App at 113. "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Kalaj v Khan*, 295 Mich App 420, 425; 820 NW2d 223 (2012). Unpreserved evidentiary error is reviewed for plain error. *People v Coy*, 258 Mich App

1, 12; 669 NW2d 831 (2003). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763 (citation omitted).

Based on his counsel's failure to object, Jenkins also argues counsel was ineffective. This claim was not preserved with a motion for a new trial or an evidentiary hearing in the trial court. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). An unpreserved ineffective assistance of counsel claim is reviewed for mistakes apparent on the record. *Heft*, 299 Mich App at 80.

Jenkins first challenges plaintiff's failure to provide pretrial notice of the intent and motive to introduce MRE 404(b) other acts evidence. Specifically, testimony that Flint Home Depot's loss prevention manager Justin Luczak was familiar with Jenkins, that Jenkins and Furline were involved in the Flint Home Depot fire and theft on October 28, and Royal's testimony that Furline made a no receipt return at the Burton Lowe's. Jenkins's argument for this claim is two sentences, therefore, we find it abandoned on appeal for failure to brief the merits. *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004).

Jenkins also argues that the testimony regarding the Flint Home Depot and Burton Lowe's events should not have been admitted against him because those events were irrelevant, only showed a propensity for Jenkins to associate with Furline, and was more prejudicial than probative. We disagree. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "All relevant evidence is admissible," MRE 402, however it may still be excluded under MRE 403 when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Testimony regarding the theft and fire at the Flint Home Depot was relevant and admissible to establish the charge of conducting a criminal enterprise that required the showing of a pattern of racketeering, including that there be, "not less than 2 incidents of racketeering." MCL 750.159i(1); MCL 750.159f(c). It is "well settled that in prosecutions for racketeering offenses, the government may introduce evidence of uncharged offenses to establish the existence of the criminal enterprise." *United States v Baez*, 349 F3d 90, 93 (CA 2, 2003); see also *United States v Mejia*, 545 F3d 179, 206 (CA 2, 2008) ("Where, as here, the existence of a racketeering enterprise is at issue, evidence of uncharged crimes committed by members of that enterprise, including evidence of uncharged crimes committed by the defendants themselves, is admissible to prove an essential element of the RICO crimes charged—the existence of a criminal enterprise in which the defendants participated.") (Quotation marks and citation omitted). Jenkins additionally argues that evidence of the Flint Home Deport incident was irrelevant because there was no evidence he was involved. To the contrary, Walker testified that Jenkins was present with her and Furline at the Flint Home Depot, that it was his idea to steal items from that store, and that he set the fire there. Jenkins debates the credibility of this evidence, but that was for the jury to decide and did not preclude its admission. He also contends that the testimony showed his propensity to associate with Furline, which he asserts, without explanation, prejudiced him. Proof of Jenkins's relationship with Furline was probative

to establishing plaintiff's aiding and abetting theory, and was evidence that they associated with each other through a pattern of racketeering activity under MCL 750.159i(1).

The admission of testimony from Royal, the loss prevention manager at the Burton Lowe's, regarding the Burton Lowe's event involved Furline and not Jenkins, but was still not an abuse of discretion because it was a continuation of the Flint Home Depot events. The item number for the DeWalt contractor saw stolen from the Flint Home Depot matched the item number of the DeWalt contractor saw returned to the Burton Lowe's Store. Walker's testimony established that the proceeds from that return were eventually split 50/50 between her and Jenkins. In order to prove racketeering, plaintiff had to show the defendants conspired, or aided or abetted to commit an offense for financial gain. MCL 750.159(g). Thus the Burton Lowe's return was also relevant to establish the pattern of racketeering portion of the conducting a criminal enterprise charge.

Testimony from Luczak, loss prevention manager at the Flint Township Lowe's, that he was familiar with Jenkins was relevant and not unfairly prejudicial. When asked whether he was familiar with either defendant, Luczak testified "I was familiar with Alvin Jenkins . . . from other incidents unrelated to this." His familiarity with Jenkins was relevant to the investigation of the events at the Flint Home Depot, his identity of Jenkins in photos provided to him by Royal, and identification of Jenkins in court. While testimony that Jenkins was known by loss prevention personnel may have been prejudicial, because plaintiff did not delve into the circumstances of the other unrelated incidents mentioned by Luczak, Jenkins was not unfairly prejudiced by the testimony.

Jenkins also contends his counsel was ineffective for failing to object to the bulk of the testimony that was presented regarding his participation in the Flint Home Depot fire and theft and Burton Lowe's events. To establish a claim of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Under this test, counsel is presumed effective," *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007), and "the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy," *People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d (2003). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). This Court "will not second-guess counsel regarding matters of trial strategy," or "assess counsel's competence with the benefit of hindsight." *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999). Nor will we find counsel ineffective for failure to make meritless objections. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Plaintiff presented 27 witnesses in its case-in-chief, many of whom provided extremely brief testimonies. Thus, in this case, a witness who may have said something damaging could quickly be replaced with another if counsels limited their questions. Such was the case with Luczak. During his brief testimony, Luczak was asked three times whether he was familiar with Jenkins. Plaintiff asked twice and codefendant's counsel asked again just to distinguish his client from Jenkins. As stated earlier, Luczak did not discuss how he was familiar with Jenkins.

An objection from Jenkins's counsel could have very likely prompted that discussion. Jenkins's counsel chose not to ask the question during his quick cross-examination of Luczak. In this circumstance, the decision not to object appeared to be trial strategy.

Jenkins's counsel was not required to object to lack of notice under MRE 404(b)(2) because plaintiff did not offer or argue the evidence of the Flint Home Depot and Burton Lowe's events under this rule. Further, an objection by Jenkins's counsel as to the admission of testimony about those events would have been overruled, as was the case with the objection during Royal's testimony, because of the relevancy of the testimony to establishing the charge of conducting a criminal enterprise. Counsel's objection would have been meritless in that instance.

## D. JURY INSTRUCTION ERROR

"To preserve an instructional error for review, a defendant must object to the instruction before the jury deliberates." *Jimkoski v Shupe*, 282 Mich App 1, 9; 763 NW2d 1 (2008). Jenkins's claim of instructional error was not preserved because Jenkins's trial counsel did not object to the jury instructions. Consequently, Jenkins also argues counsel was ineffective for failing to object. Jenkins also did not preserve his ineffective assistance claim because he did not move for a new trial or an evidentiary hearing in the trial court. *Heft*, 299 Mich App at 80. Unpreserved claims of instructional error are reviewed for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763. An unpreserved ineffective assistance of counsel claim is reviewed for mistakes apparent on the record. *Heft*, 299 Mich App at 80.

Jenkins argues the jury should have been instructed under Michigan Criminal Jury Instructions (M Crim JI) 5.5, 5.6 and 5.13 based on the evidence at trial that Walker was an accomplice in the events that took place at the Flint Home Depot on October 28. Jenkins blames the failure not to instruct the jury on the court and his trial counsel. We find Jenkins's claim of instructional error waived because his trial counsel expressly approved the jury instructions as given. *People v Ortiz*, 249 Mich App 297, 311; 642 NW2d 417 (2002). Waiver is "the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted). "[E]xpressions of satisfaction with the trial court's instructions constitute a waiver of any instructional error." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). Further, "[t]he failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused." MCL 768.29.

We disagree with Jenkins's claim that his trial counsel was ineffective for failing to request the same instructions above. To establish a claim of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. "Under this test, counsel is presumed effective," *Frazier*, 478 Mich at 243, and "the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy," *Riley (After Remand)*, 468 Mich at 140.

There was no evidentiary basis for the jury to be instructed under M Crim JI 5.5, 5.6 or 5.13. M Crim JI 5.5 applies when a witness is a disputed accomplice. If the jury finds that the witness was actually an accomplice, then M Crim JI 5.5 is followed by M Crim JI 5.6, which instructs the jury to take into consideration certain cautions when examining accomplice testimony. M Crim JI 5.5 would have required the jury to decide the initial question of "whether [the witness] took part in *the crime the defendant is charged with committing*" in order to determine whether Walker was an accomplice. M Crim JI 5.5(1) (emphasis added). Jenkins was charged with third-degree arson, first-degree retail fraud, and conspiracy to commit both crimes, for events that occurred on October 29. There was no evidence that Walker also took part in those events. Instead, Walker testified that she declined Jenkins's invitation to go with him to the Saginaw Home Depot on October 29. Her testimony was corroborated by the absence of evidence showing her present at the Saginaw Home Depot and Burton Lowe's stores on October 29. Indeed, there was no surveillance video or witness testimony placing Walker with Jenkins on October 29. Walker could similarly not be considered an accomplice to Jenkins's additional charge of conducting a criminal enterprise because her involvement in only the October 28 incident did not satisfy the statutory requirement to establish a "pattern of racketeering activity," that there be, "not less than 2 incidents of racketeering." MCL 750.159i(1); MCL 750.159f(c). From this evidence, it is clear that it would have been futile for Jenkins's counsel to request M Crim JI 5.5, and M Crim JI 5.6, because this instruction is rendered null when M Crim JI 5.5 does not apply. Counsel is not ineffective for failing to make meritless objections. *Ericksen*, 288 Mich App at 201.

## E. IDENTIFICATION TESTIMONY

"We review for an abuse of discretion the trial court's evidentiary rulings that have been properly preserved." *People v Fomby*, 300 Mich App 46, 48; 831 NW2d 887 (2013). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. However, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." MRE 403. Evidence regarding a defendant's identity is relevant when the identity of a suspect is at issue. *People v Baker*, 114 Mich App 524, 529; 319 NW2d 597 (1982). However, "the issue of whether the defendant in the courtroom [i]s the person pictured in a surveillance photo [i]s a determination properly left to the jury." *People v Fomby*, 300 Mich App 46, 52; 831 NW2d 887 (2013) (citation and quotation marks omitted). This Court has also recognized that when there is "reason to believe that the witness is more likely to identify correctly the person than is the jury," the testimony is admissible. *Id*. (Citation omitted).

Jenkins argues that identification testimony from Detective Larry Biniecki was prejudicial and invaded the province of the jury. Detective Biniecki testified from the position of a layperson because he was not offered by the plaintiff, nor qualified by the court, as an expert. MRE 701 governs the admission of lay opinion testimony and provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Detective Biniecki identified Jenkins 11 times in still photos taken from the surveillance video at the Saginaw and Flint Home Depots, and the Burton Lowe's. His testimony was rationally based on his own perception, but inadmissible under MRE 701 because it was not "helpful to a clear understanding" of the evidence or the determination of the identification of the individuals in the photos. MRE 701. There was no indication from the record that the still photos were distorted or that it was difficult to identify Jenkins in them. Further evidence of this came from Detective Biniecki's own testimony during cross-examination that, "the video speaks for itself," "I believe everybody can view [the video footage] and make their own determination," and "I believe everybody can view it and make their own interpretations." "[W]here a jury is as capable as anyone else of reaching a conclusion on certain facts, it is error to permit a witness to give his own opinion or interpretation of the facts because it invades the province of the jury." *People v Drossart*, 99 Mich App 66, 80; 297 NW2d 863 (1980). In accord with *Drossart*, the province of the jury was invaded here and it was an abuse of discretion for the trial court to admit Detective Biniecki's identification testimony. Any abuse of discretion notwithstanding, "a preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999) (quotation omitted). Detective Biniecki's identification testimony, while improper, did not affect the outcome of the trial when Walker, Royal, Marciak, and Tyson also identified Jenkins at either the Flint and Saginaw Home Depots, or Burton Lowe's during the charged incidents.

IV. CONCLUSION

Defendant Furline's and defendant Jenkins's convictions and sentences are vacated and the matters are remanded for a new trial. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens